## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **STEVEN CARUSO,** | ) ) ) |
| **Petitioner,** | ) ) |
| **v.** | ) )  **Civil Action No. 17-11822-DJC** |
| **ERIN GAFFNEY,** | ) ) |
| **Respondent.** | ) ) ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                          **March 6, 2019**

## I.      Introduction

Petitioner Steven Caruso ("Caruso"), acting *pro se*, has filed a petition seeking a writ of habeas corpus ("Petition") pursuant to 28 U.S.C § 2254.  D. 21.  Erin Gaffney ("Gaffney"), the Superintendent of Old Colony Correctional Center ("OCCC"), opposes the Petition on the basis that Caruso's grounds for habeas relief are procedurally defaulted or fail on the merits.  For the foregoing reasons, the Court DENIES the Petition, D. 1.

## II.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant a writ of habeas corpus if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1).  "AEDPA erects a

formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013).

A state court decision is "contrary to" clearly established federal law "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or 'confronts a set of facts that are materially indistinguishable from'" a Supreme Court precedent and arrives at an opposite conclusion. Penry v. Johnson, 532 U.S. 782, 792 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A state court decision is an "unreasonable application" of clearly established federal law "if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). In sum, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

## III.     Relevant Factual and Procedural Background

### A.     Police Investigation and Charge

Unless otherwise noted, this factual background is drawn from the Supreme Judicial Court's decision affirming Caruso's conviction. S.A. 1295; Commonwealth v. Caruso, 476 Mass. 275 (2017). For the purposes of § 2254(d)(2), any factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). To the extent that Caruso objects to certain findings made by the state court, see D. 23 at 3-7, he failed to rebut same with clear and convincing evidence and, accordingly this Court presumes these factual findings to be correct.

On August 15, 2003, Caruso was convicted after a jury trial in Middlesex Superior Court of the first-degree murder of Sandra Berfield ("Berfield"). S. A. 116-141.[1] These charges arose out of the events leading up to and culminating on January 20, 2000. Prior to that day, Caruso had been a long-time, regular customer of Bickford's Restaurant in Medford, where Berfield worked as a server. S.A. 1303. At Caruso's request, Berfield became his regular server. Caruso eventually asked Berfield on a date, which Berfield declined. S.A. 1303. Caruso's behavior towards Berfield changed thereafter. S.A. 1303. Caruso began to stare at Berfield in a "hateful manner," repeatedly attempted to contact Berfield outside of her workplace and vandalized Berfield's car, including by slashing her tires and pouring battery acid into the gas tank. S.A. 1303. On May 12, 1999, Caruso was convicted of malicious destruction of Berfield's property. S.A. 248, 333. Caruso was also charged with, but not convicted of, slashing Berfield's tires. S.A. 1303. Berfield obtained a restraining order against Caruso, which Caruso repeatedly violated. Id. On January 20, 2000, Caruso left a package containing a pipe bomb on Berfield's porch. Id. A neighbor examined the package containing the bomb, which was addressed to "Passanisi" and included a Malden return address. S.A. 1303-04. Another neighbor later heard Berfield walk downstairs to retrieve the package, which exploded, killing Berfield. S.A. 1304.

During an interview with police, Caruso provided two inconsistent explanations of his whereabouts earlier that morning and told the police, among other statements, that Berfield had "caused him a lot of problems" and he did not "like" her anymore. Id. In executing a search warrant at Caruso's residence, the police discovered, among other things, battery parts, pieces of pipes, metal fragments with human tissue or blood on them, pieces of copper, wires and gun powder. Id. These items were consistent with similar materials found at the scene of the explosion.

---

[1] The Court refers to the Defendant's Supplemental Answer, D. 14 (filed manually), as "S.A."

Id.  A search of Caruso's computer revealed detailed information about Berfield, her family and past boyfriends.  Id.  Police also found a document containing a postal service code concerning the mail route to Berfield's home and a mailing label containing the name "Passanisi," *i.e.*, the last name of Berfield's sister, with a Malden address, consistent with the return address on the package containing the bomb.  Id.  Shortly after the search, Caruso's sister told the police that she had found a booklet titled, "High-Low Boom Explosives," in Caruso's bedroom.  Id.  In addition, after officers conducted a search of the scene of the explosion, a professional cleaning service, Aftermath, Inc. Cleaning Services ("Aftermath"), cleaned the premises and delivered additional items to the fire marshal.  Id.

Once incarcerated awaiting trial, Caruso interacted with a fellow inmate named Michael Dubis ("Dubis"), to whom Caruso made inculpatory statements.  S.A. 721, 1305.  Dubis recognized Caruso's name and face from the newspaper and asked him questions about Berfield's death.  S.A. 1305.  Dubis talked to Caruso for one and a half hours with the intention of finding out what happened in Caruso's case.  S.A. 769, 1305.  Dubis tried to win Caruso's trust during the conversation and deliberately asked questions to be able to pass information on to law enforcement.  S.A. 1305.  Caruso made incriminating statements to Dubis, including that he had learned to make a bomb from the internet and a friend, he used batteries and a pipe to make the same and he explained the package that killed Berfield would only explode when it was opened due to a "basic separation device."  Id.  Caruso also told Dubis that he knew "[the bomb] would kill anybody that would open it."  S.A. 750, 1305.  Dubis told Massachusetts State Police ("MSP") Sergeant James Plath ("Plath"), to whom he had previously provided information in other matters, about his conversation with Caruso.  S.A. 721, 1305.  Plath notified law enforcement officials involved in Caruso's case.  S.A. 1305.  The trial court later denied Caruso's motion to suppress

his statements to Dubis, which was denied and Dubis testified to Caruso's statements at trial.  S.A. 1305.

In March 2000, two months after Berfield was killed, Caruso was indicted for first-degree murder.[2]  S.A. 7.

## B.  Relevant State Court Proceedings

Caruso's trial began in July of 2003.  S.A. 7-14.  On August 15, 2003, the jury returned a guilty verdict of murder in the first degree based upon theories of deliberate premeditation and extreme atrocity or cruelty.  S.A. 13, 148, 1303.  The trial court sentenced Caruso to a term of life imprisonment.  S.A. 13.  Caruso filed a timely notice of appeal.  S.A. 14.[3]

In his direct appeal to the Supreme Judicial Court, Caruso raised six claims:  actual innocence as to Berfield's murder ("Ground 1"); violation of his Sixth Amendment rights due to the admission of Dubis's testimony at trial ("Ground 2"); violation of his right to confrontation based on the trial court's admission of Berfield's prior recorded testimony from another proceeding as read by one of the prosecutors ("Ground 3"); violation of his right to confrontation when the trial court denied Caruso's requests to rebut the prosecution's hostile intent claim and to cross-examine testimony and physical evidence from Captain John Busa and Aftermath (which has been divided into three parts) ("Ground 4," which has been further divided into subsections);[4] violation

---

[2] Caruso was also indicted for several firearms-related offenses; the Commonwealth entered a *nolle prosequi* as to each of these indictments after the jury convicted him of murder.  S.A. 14.

[3] Although Caruso filed a timely notice of appeal, the assembly of the trial record for the appeal was not complete until December 5, 2005, S.A. 15, and, at Caruso's request, his appeal was stayed from October 6, 2006 through May 2014, S.A. 21, with his appellate brief being filed on November 9, 2015.  S.A. 21.

[4] The Court adopts the construction of Ground 4 as divided into three separate claims:  4(a) the state trial judge's denial of Caruso's motion to admit two video recordings violated his Sixth Amendment rights; 4(b) the trial court's admission of the testimony of a substitute witness, Trooper Matthew Arnold, violated his Sixth Amendment right to confront Busa; and 4(c) the trial

of Caruso's Sixth Amendment rights based on the trial court's admission of the testimony of the Commonwealth's wire expert ("Ground 5"); and deprivation of his right to a fair trial based on the admission of evidence derived from searches of Caruso's computer ("Ground 6"). S.A. 23.

On January 13, 2017, the Supreme Judicial Court denied Caruso's appeal and affirmed Caruso's murder conviction. S.A. 1296, 1314.

### C.     **This Petition**

Caruso has filed this Petition, raising claims that were addressed in his direct appeal to the Supreme Judicial Court, D. 21, that the Court identifies above and below as Grounds 1-6.

## IV.    **Discussion**

### A.     **Grounds 3, 4(c) and 5 are Procedurally Defaulted**

Among the grounds set forth in the Petition, Caruso alleges violations of his right to confrontation based on the trial court's admission of Berfield's prior recorded testimony ("Ground 3") and evidence recovered from the crime scene by Aftermath ("Ground 4(c)"), as well as the trial court's denial of Caruso's request to question the reliability of admitted expert testimony regarding electrical wire found at the crime scene and in Caruso's basement workshop ("Ground 5"). Grounds 3, 4(c) and 5 are not cognizable here because Caruso failed to comply with state procedural requirements. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

---

court's admission of evidence recovered from the crime scene by Aftermath violated Caruso's Sixth Amendment confrontation rights. D. 22.

The Massachusetts contemporaneous objection rule, which requires a party to make their objection known at the time of the ruling, Mass. R. Crim. P. 22, is an independent and adequate state procedural rule barring federal habeas review.  See Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010).  "The [Supreme Judicial Court] regularly enforces the rule that a claim not raised is waived."  Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002); see Janosky, 594 F.3d at 44 (stating that "[w]e have held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts").  As explained below, because Caruso did not lodge a contemporaneous objection as to Grounds 3, 4(c) and 5 at trial, and where no prejudice was demonstrated to have occurred from these alleged violations of federal law, the Supreme Judicial Court reasonably denied relief on an independent and adequate state-law procedural ground.  Moreover, the law is clear that the state court does not waive its enforcement of the contemporaneous objection rule where, as here, the Supreme Judicial Court considered Grounds 3, 4(c) and 5 to determine the presence of a substantial likelihood of a miscarriage of justice.  See Janosky, 594 F.3d at 44 (explaining that the "discretionary miscarriage-of-justice review does not amount to a waiver of the state's contemporaneous objection rule").

First, with respect to Ground 3, as the Supreme Judicial Court noted, Caruso did not object at trial to the admission of Berfield's prior recorded testimony on the basis of the prior recorded testimony exception to the hearsay rule or on constitutional grounds, raising both issues for the first time on appeal.[5]  S.A. 1313.  Accordingly, the Supreme Judicial Court analyzed both under

---

[5] The recorded testimony, used by the Commonwealth to show the hostile relationship between Caruso and Berfield, consisted of statements made by Berfield during a bail revocation hearing on

the substantial likelihood of a miscarriage of justice standard and rejected both challenges. S.A. 1312-14. To the extent Caruso objected to the manner by which Berfield's prior testimony was presented to the jury, the Supreme Judicial Court noted that this objection also was raised for the first time on appeal. S.A. 1312. "[U]nder well settled principles," courts "need not – indeed, should not – consider matters which were not raised below." Puleio v. Vose, 830 F.2d 1197, 1202 (1st Cir. 1987); see Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59, v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) (noting that "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal"). The Supreme Judicial Court also concluded that neither aspect of Caruso's Ground 3 gave rise to a substantial likelihood of a miscarriage of justice. S.A. 1312. Against this backdrop, this Court finds that Ground 3 is procedurally defaulted.

Second, as to Ground 4(c), Caruso asserts that the trial court's admission of evidence that Aftermath, a professional cleaning service, recovered from the crime scene violated his confrontation rights. D. 21 at 30. When he presented this argument to the Supreme Judicial Court on appeal, however, Caruso conceded that the "defense failed to object to the admission of Aftermath evidence," and, therefore, the relevant standard of review "is for whether the evidence's admission created a substantial likelihood of a miscarriage of justice." S.A. 83-84. The Supreme Judicial Court recognized that this claim too was made "[f]or the first time on appeal." S.A. 1312. Because Caruso failed to raise this issue in the court below, this claim is also procedurally defaulted.

---

November 1998, S.A. 951, and a pretrial hearing on April 1999, S.A. 937, stemming from charges against Caruso for malicious destruction of property. S.A. 1313.

Finally, in support of Ground 5, Caruso argues that the trial court's admission of expert testimony of a license electrician, Dennis Toto, concerning electrical wire found both in Caruso's home and at the crime scene was improper. D. 21 at 31-32; S.A. 1309. By raising a challenge to the reliability of this expert's methodology for the first time on appeal, Caruso has again failed to preserve his right to dispute the trial court's admission of this testimony. S.A. 1310. To preserve an objection to a proffered expert opinion, a defendant must file a motion in the accordance with the principles set forth in Commonwealth v. Lanigan, 419 Mass. 15, 22 (1994). Because Caruso offered no such motion, the Supreme Judicial Court had "no record upon which to determine that the methodology did not satisfy the Daubert/Lanigan gatekeeper reliability requirements." S.A. 1310; see Lanigan, 419 Mass. 15 at 24. As with Caruso's other grounds, the Supreme Judicial Court considered whether the admission of this testimony gave rise to a substantial likelihood of a miscarriage of justice and found none. S.A. 1310. Because Grounds 3, 4(c), and 5 are procedurally defaulted, habeas relief cannot be granted.

Even if Caruso could show cause for his default as to these grounds (which he has not), he would still have to show "actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. He has failed to do so here for the reasons explained in the Supreme Judicial Court's rejection of each claim under the substantial likelihood of a miscarriage of justice analysis.[6] S.A. 1310, 1312-14.[7]

[6] As discussed below in regard to Ground 1, Caruso has also failed to show his actual innocence to excuse his procedural default as to these grounds. See Gaskins v. Duval, 640 F.3d 443, 454 (1st Cir. 2011).

[7] Although Grounds 3, 4(c) and 5 are procedurally defaulted and the Court need not reach the merits of same, the Court notes that these grounds also fail on the merits for the reasons articulated in the opposition to the Petition. D. 22 at 13-17.

**B.**     **Ground 6 of Caruso's Petition Fails on the Merits and is Otherwise Not Ripe for Habeas Review**

As Ground 6, Caruso argues that the trial court deprived him of a fair trial by admitting evidence derived from searches of his computer.  D. 21 at 38.  The computer searches, which were conducted by Detective Lieutenant John McLean of the Medford Police Department, produced positive matches to Berfield and bombs, indicating the presence of numerous electronic files likely containing information relevant to the homicide investigation.  S.A. 861, 1310.  The searches additionally revealed Caruso's use of personal information concerning Berfield's family, including a mailing label with the same address as the package containing the bomb that killed Berfield.  S.A. 1310-11.  At trial, the Commonwealth introduced two types of evidence that Caruso argues constituted prejudicial error:  "(1) dates upon which certain files on [Caruso's] computer were last accessed; and (2) still images of files displayed on the computer monitor (screen shots)."  S.A. 1310.

Caruso now contends, as he did before the Supreme Judicial Court on appeal, that the trial judge erred in admitting information about the "the last access dates" of certain computer programs absent evidence as to "the accuracy or reliability of the computer's time-keeping function."  S.A. 1310.  The Supreme Judicial Court rejected this claim, reasoning that "people commonly and reasonably rel[y] on the accuracy of time-keeping mechanisms on computers, cellular telephones, and other electronic devices."  S.A. 1310.  The court also noted that "[e]vidence that a time stamp indicates a particular time is a sufficient basis for a jury to conclude that the relevant activity took place at that time, particularly when there is no evidence to the contrary in the record."  Id.  Absent binding or persuasive authority to the contrary, this Court notes that it is the trial court's discretion to determine whether a proper foundation has been established for any evidence, including time-keeping mechanisms.  See Commonwealth v. Whynaught, 377 Mass. 14, 19 (1979) (explaining

that the determination of the accuracy of a testing method is left to the trial judge's discretion). The Supreme Judicial Court concluded that the trial court's exercise of discretion did not result in reversible error and this Court agrees.

Caruso further objects to the admission of still images or "screenshots" taken from a program on his computer, arguing the Commonwealth failed to establish the reliability of the software from which the screenshots were taken and similarly failed to show that Caruso ran the software the same way it was presented during Detective Lieutenant McLean's testimony at trial. S.A. 1310-11. The Supreme Judicial Court concluded that McLean's testimony provided sufficient foundation about how the software worked, however, only one of the screenshots should have been admitted because the Commonwealth was unable to establish that Caruso "actually accessed the same information." S.A. 1311. The Supreme Judicial Court, nevertheless, determined that the screenshot "directly inculpating" Caruso was properly admitted and the remainder "were either cumulative or innocuous and did not prejudice the defendant." S.A. 1311. Where improperly introduced evidence is merely cumulative of other persuasive evidence, admission of the former does not constitute prejudicial error. See Commonwealth v. Wilson, 427 Mass. 336, 348 (1998) (concluding that "improperly admitted hearsay did not prejudice the defendant because it was merely cumulative of properly admitted evidence"). Given the abundance of admissible evidence at trial showing Caruso's "obsess[ion]" with the victim, S.A. 1311, the Court similarly concludes the impact of any improperly admitted screenshot at trial was cumulative and did not prejudice Caruso.

To the extent that Caruso alleges the admission of the evidence from his computer was a due process violation of his right to a fair trial, this part of the claim is unexhausted. "In recognition of the state court's important role in protecting constitutional rights . . . a federal court will not

entertain an application for habeas relief unless the petitioner has fully exhausted his state remedies in respect to each and every claim." Adelson, 131 F.3d at 261. To satisfy the exhaustion requirement, "[i]t is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present – or do his best to present – the issue to the state's highest tribunal." Mele v. Fitchburg Dist. Court, 850 F.2d 817, 820 (1st Cir. 1988). Here, Caruso has not done so. Caruso's appeal to the Supreme Judicial Court and supporting documents cite no Supreme Court cases or other relevant precedents on federal due process, made no mention of the Fourteenth Amendment and eschewed all references to the concept of due process with respect to the admission of evidence from his computer. See, e.g., S.A. 95-109. Under these circumstances, this Court concludes that Caruso has not exhausted his federal due process claim to the extent he appears to allege such a claim here as part of Ground 6. Caruso's failure to exhaust is sufficient to defeat the Petition as to Ground 6. See Jackson v. Coalter, 337 F.3d 74, 86 (1st Cir. 2003).

Where, as here, a petitioner's unexhausted claim is "patently without merit," the AEDPA allows a federal court, in the interests of judicial economy, to dispose of that claim with prejudice. See 28 U.S.C. § 2254(b)(2) (providing that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); see also Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (holding that a district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim") (internal quotation omitted). Caruso has not sufficiently alleged a due process violation here. To trigger habeas relief, "the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" Coningford v. Rhode Island, 640 F.3d 478,

484 (1st Cir. 2011) (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)).  To be a constitutional violation, "a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible."  <u>Petrillo v. O'Neill</u>, 428 F.3d 41, 44 n.2 (1st Cir. 2005).

Such was not the case here.  First, as to the Supreme Judicial Court's holding as to the admission of time-keeping functions of Caruso's computer, the court concluded that the jury was entitled to "rely on their own common sense and life experience" in deciding whether to credit the information from Caruso's computer showing when he last accessed certain computer programs. S.A. 1310.  "[B]ecause jurors have a superior vantage point for sizing up the whole picture," the Court agrees that it was reasonable for the jury to assess the reliability of the evidence at issue here.  <u>See</u> <u>United States v. Acosta-Colon</u>, 741 F.3d 179, 194 (1st Cir. 2013); <u>see</u> <u>also</u> <u>United States v. Bray</u>, 853 F.3d 18, 27 (1st Cir. 2017) (holding that it is left "to 'the jury to choose between varying interpretations of the evidence'") (quoting <u>United States v. Ortiz</u>, 966 F.2d 707, 711 (1st Cir. 1992)).  For this reason, the admission of the last access date of computer programs on Caruso's computer did not infect the trial with fundamental unfairness such that a violation of due process would result.  Nor was there a due process violation when the trial court improperly admitted certain screenshots from Caruso's computer.  S.A. 1311.  The Supreme Judicial Court held that this evidence was cumulative of other properly admitted evidence and, as a result, did not prejudice Caruso.  S.A. 1311.  These alleged evidentiary errors, therefore, fall outside the narrow category recognized as violative of fundamental fairness.  <u>See</u> <u>Coningford</u>, 640 F.3d at 485 (ruling that the state court's approval of introduction of prior bad acts evidence "was well within universe of plausible evidentiary rulings," and did not render his trial unfair).  Ground 6 is denied on the merits.

### C.   Caruso's Remaining Grounds for Relief Fail on the Merits

Grounds 1, 2, 4(a) and 4(b) fail on the merits and do not support habeas relief.   To trigger relief under 28 U.S.C. § 2254(d)(1), the petitioner must show the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).   Federal law, for the purposes of an AEDPA analysis, is defined as Supreme Court holdings and excludes dicta.  White, 572 U.S. at 419.   "An unreasonable application of federal law" is not the same as "an incorrect application of federal law."  Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016).   Habeas relief is not warranted if "'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

### 1.   Caruso Cannot Satisfy the Actual Innocence Standard

In support of Ground 1 of the Petition, Caruso argues here, as he did before the Supreme Judicial Court, that he could not have left the bomb on Berfield's doorstep because he was at a nearby café when the package was delivered.  D. 21 at 15-17.  A habeas petitioner who asserts he is innocent of the underlying crime must make a "colorable showing of factual innocence." McCleskey v. Zant, 499 U.S. 467, 495 (1991).   "To establish actual innocence, 'petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"   Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999) (quoting Schlup v. Delo, 513 U.S. 298, 321 (1995)).  A petitioner must do more than simply quarrel with new trial evidence or contend its legal insufficiency, but support his claim with "evidence of innocence so strong that a [habeas] court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  Schlup, 513 U.S. at 316.

Caruso has failed to present any new evidence, let alone strong evidence, of his innocence. During the police investigation, Caruso offered the same purported proof of his innocence as he does here, *i.e.*, he was at a nearby café when the bomb that killed Berfield was left on her doorstep. See S.A. 148; D. 21 at 15. Even accepting Caruso's proffered alibi, which conflicts with other statements he gave the police, the Supreme Judicial Court concluded "that [Caruso] could have delivered the package shortly after 9:30 a.m. before he was identified by a witness at a café, approximately ten minutes away from the [Berfield]'s home, at 10 a.m." S.A. 1304 n.1. Regardless, merely rehashing the same information is not enough to satisfy the exacting actual innocence standard. In light of the strong evidence of Caruso's guilt and the dearth of evidence to the contrary, Caruso's Ground 1 claim fails.

2. *The Supreme Judicial Court Did Not Unreasonable Apply Clearly Established Federal Law in Denying Caruso's Right to Counsel Claim*

As Ground 2, Caruso asserts that the admission of trial testimony by Dubis, a prisoner to whom Caruso made incriminating statements following his arrest, prior to trial and outside the presence of his attorney, violated his Sixth Amendment right to the assistance of counsel. See D. 21 at 17-22. Pursuant to the Sixth Amendment, the Commonwealth is prohibited from deliberately eliciting incriminating statements from an individual who has been charged with a crime without the individual's counsel present. See Massiah v. United States, 377 U.S. 201, 206 (1964). In the present case, the applicable clearly established federal law is the Supreme Court's holding in United States v. Henry, 447 U.S. 264 (1980). In that case, the Supreme Court considered whether there was Sixth Amendment violation where the government paid an informant to obtain information from a defendant who was incarcerated in the same cellblock. Id. at 265-66. The informant testified regarding these conversations at the defendant's trial. Id. at 266. In affirming the Fourth Circuit's determination that the informant's testimony was inadmissible, the Supreme

Court held that the government violated the defendant's Sixth Amendment rights "[b]y intentionally creating a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel." Id. at 274.

The facts of this case are distinguishable from those in Henry. First, the Supreme Judicial Court held that Dubis was not a government agent when he spoke with Caruso, S.A. 1306, noting that "[n]o agency relationship exists in the absence of a prior arrangement between the Commonwealth and the informant." Id. No evidence suggests that the Commonwealth deliberately placed Dubis in the same cell to elicit information from Caruso or that any law enforcement official involved in Caruso's case knew that the two men would be placed in the same cell. Id. That is, Caruso's placement in the same cell as Dubis was not the result of a design to obtain incriminating statements. S.A. 1306; see Kuhlmann v. Wilson, 477 U.S. 436, 459 (1980) (noting that "[t]he Sixth Amendment is not violated whenever – by luck or happenstance – the state obtains incriminating statements from the accused after the right to counsel has attached") (internal citation omitted). Dubis' conduct was also unlike that of the informant in Henry. Here, although Dubis may have been motivated by an interest in currying favor with the government, he had no arrangement with the Commonwealth before he engaged Caruso in their jailhouse conversation. S.A. 1306-07. Similarly, the facts of the case at hand, "do not even suggest that the Commonwealth planned for Dubis and the defendant to share a cell." S.A. 1307; cf. Henry, 477 U.S. at 273 (emphasizing that the "accused [was] in the company of a fellow inmate who [was] acting by prearrangement as a Government agent" in ruling that the inculpatory statements at issue were obtained in violation of the Sixth Amendment). Moreover, the fact that Dubis had previously provided information to Sergeant Plath on more than one occasion in the past did not make Dubis a government agent where "all of Dubis's contact with law enforcement regarding the defendant's

case took place after Dubis's sole conversation with the defendant." S.A. 1307. Without more and where the facts were not "materially indistinguishable" from those at issue in <u>Henry</u>, this Court cannot conclude that the Supreme Judicial Court's decision was contrary to established Supreme Court precedent.

Second, the Supreme Judicial Court's decision was not a violation or unreasonable application of <u>Henry</u>. As illustrated above, a state court decision may be "an unreasonable application" of federal law if it identifies the applicable governing legal rule, "but unreasonably applies it to the facts of the particular state prisoner's case." <u>Williams</u>, 529 U.S. at 413. By contrast here, the Supreme Judicial Court reasonably concluded that Dubis was not operating as a government agent and that his encounter with Caruso was the result of happenstance. <u>See</u> S.A. 1306. In <u>Abrante v. St. Amand</u>, 595 F.3d 11, 15 (1st Cir. 2010), the First Circuit rejected a similar claim as Caruso's in which the petitioner based his Sixth Amendment violation on "nothing more than the coincidence" that the informant was moved to the same cell as him. <u>Id.</u> at 16; <u>see</u> S.A. 1306.

Third, like the petitioner in <u>Abrante</u>, Caruso argues that the timing of his pending conviction and the placement of an informant in his same cell suggests an agency relationship between the government and Dubis, and that the state court acted unreasonably in finding otherwise. S.A. 1306. In <u>Abrante</u>, however, the First Circuit held that the petitioner did not offer "clear and convincing evidence of any contact between the government and the informants beyond that described by the [state court]." <u>Abrante</u>, 595 F.3d at 16-17. The court further ruled that the informant neglected the fact that, unlike in <u>Henry</u>, there is no evidence that the government specifically charged the informant "with the task of obtaining information from the accused." <u>Henry</u>, 447 U.S. at 272 n.10. Here, the state court made a similar finding to the one in <u>Abrante</u>

and Caruso failed to offer clear and convincing evidence to the contrary. See S.A. 1306. The Court, therefore, concludes that the Supreme Judicial Court's denial of Caruso's Sixth Amendment claim was neither "contrary to" nor an "unreasonable application of" Federal Law.

### 3. Denial of Caruso's Motion to Admit Video Recordings into Evidence Did Not Constitute a Sixth Amendment Violation

Pursuant to Ground 4(a), Caruso challenges the trial judge's denial of his attempt to admit video recordings created by the victim, Berfield, to impeach her prior recorded testimony. D. 21 at 25. The videotapes purportedly showed Caruso pouring battery acid into the gas tank of Berfield's car. S.A. 1312. At trial, the Commonwealth attempted to admit the videos, but the trial judge sustained Caruso's objection to their admission because they were "dark and murky" such that the "person's face is unable to be seen." S.A. 1314. Caruso later attempted to offer the same videotapes for purposes of impeaching Berfield's credibility. D. 21 at 25; S.A. 1314. Caruso claims that the trial judge's exclusion of the same violated his Sixth Amendment right to confront Berfield and his right to present a defense. D. 21 at 26-27. The Supreme Judicial Court reasonably concluded otherwise, holding that the trial judge properly excluded this evidence because "the recordings served little, if any, value to impeach [Berfield]'s identification of the defendant." S.A. 1314. "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). Under the framework for determining whether a limitation on cross-examination constitutes a Sixth Amendment violation, "[t]he first question to be asked . . . is whether the limitation prejudiced the examination of that particular witness" and, second, "whether the error was harmless beyond a reasonable doubt." DiBenedetto v. Hall, 272 F.3d 1, 10 (1st Cir. 2001) (quotation omitted).

Here, the trial court's ruling did not deprive Caruso of a constitutional right. As an initial matter, the videotapes would not have given the jury a "significantly different impression" of Berfield's credibility. Id. As Caruso argued at trial before attempting to admit this evidence for impeachment purposes, the videos lack substantial probative value given the identity of the perpetrator in the videos is unidentifiable. S.A. 1314. The trial court's decision was also harmless beyond a reasonable doubt. When assessing harmlessness, courts consider a number of factors, "including the importance of the testimony foreclosed, whether it was cumulative, the extent of cross-examination otherwise permitted, 'and . . . the overall strength of the prosecution's case.'" Farley v. Bissonnette, 544 F.3d 344, 348 (1st Cir. 2008) (quoting Van Arsdall, 475 U.S. at 684). For the reasons previously explained, the Commonwealth presented a strong case against Caruso independent of these recordings such that the exclusion of the same constituted harmless error at worst. See Harrington v. California, 395 U.S. 250, 254 (1969) (stating that an error can more safely be considered harmless when there is "overwhelming" evidence of guilt).

The Court further recognizes that the trial judge "retains wide latitude to impose reasonable limits on cross examination in order to avoid confusion of the issues or extended discussion of marginally relevant material." United States v. Mikutowicz, 365 F.3d 65, 72 (1st Cir. 2004) (quoting United States v. Gonzalez-Vazquez, 219 F.3d 37, 45 (1st Cir. 2000)). Here, the trial judge exercised appropriate discretion in imposing "reasonable limits" on cross-examination after it was determined that the videotapes at issue "served little, if any, value" to impeach Berfield's credibility. S.A. 1314.

4.    *Admission of Substitute Testimony for Unavailable Witness Did Not Violate Caruso's Sixth Amendment Rights*

For Ground 4(b), Caruso also challenges the Commonwealth's substitution of a witness at trial. D. 21 at 27-28. Specifically, Caruso asserts that his Sixth Amendment rights were violated

when the trial judge allowed MSP Trooper Arnold to testify in place of MSP Captain Busa, who was unavailable at the time of trial due to illness. Id. During the investigation, Busa had seized weapons and ammunition from Caruso's residence, processed them and delivered to a police chemist, John Drugan ("Drugan"), for testing. S.A. 1308. Arnold was not present at Caruso's residence during the search or during Busa's examinations of the aforementioned items, but offered his expert opinion at trial that the ammunition was reload ammunition and also testified as to the chain of custody of same and the contents of Busa's report. S.A. 1300-09, 2660-2661. At trial, Caruso objected to Arnold's substitution for Busa and argued that his inability to cross-examine Busa violated his confrontation rights. S.A. 1308. The Supreme Judicial Court ruled that Arnold's opinion regarding the reload ammunition was properly admitted since his opinion was based upon his own observations of the ammunition and defense counsel had the opportunity to cross examine him regarding the basis of that opinion. Id. Although the Supreme Judicial Court acknowledged that Arnold should not have been permitted to testify about the chain of custody and Busa's report, it concluded that such error "was harmless beyond a reasonable doubt." S.A. 1309 n.8. In evaluating the harmlessness of error, courts consider several factors including "whether the challenged statements were central to the prosecution's case; whether the statements were merely cumulative of other, properly admitted evidence; the strength of corroborating or contradicting evidence; the extent to which cross-examination was permitted; and the overall strength of the case." United States v. Ramos-Gonzalez, 664 F.3d 1, 6-7 (1st Cir. 2011). Here, the Court concludes any error as to the admission of Trooper Arnold's testimony was harmless for several reasons.

First, Arnold's opinion regarding the ammunition recovered from Caruso's residence was properly based upon his own independent examination of this evidence. See S.A. 5141-51

(describing Arnold's review and assessment of samples of ammunition referenced in Busa's investigatory report).  At trial, Caruso had a meaningful opportunity to cross-examine Arnold regarding the formulation and veracity of his opinions.  See S.A. 5152-66.  Accordingly, Arnold's opinion regarding the ammunition did not violate Caruso's right to confront witnesses against him and, as a result, was not erroneously admitted.  S.A. 1309.

Second, given the totality of evidence presented at trial, Arnold's testimony regarding Busa's investigatory report and the chain of custody for evidence Busa seized from Caruso's residence was cumulative of other evidence, including testimony provided by a trooper who was present when Busa collected the evidence as well as testimony from Drugan, the chemist who received and processed this evidence.  See S.A. 1309; Commonwealth v. Dagraca, 447 Mass. 546, 552-553 (2006) (explaining that inadmissible evidence may not be prejudicial when cumulative of other evidence).  Moreover, as the Supreme Judicial Court noted, "any weakness in the chain of custody speaks only to the weight of the evidence, not its admissibility," but, at any rate, Caruso's counsel was able to draw out Arnold's lack of personal knowledge of same during cross-examination.  S.A. 1309 n.8.  Lastly, setting aside Arnold's testimony, the Commonwealth presented overwhelming evidence of Caruso's guilt at trial.  See Saccoccia v. United States, 42 F. App'x 476, 481 (1st Cir. 2002) (noting that the tangential nature of erroneously admitted testimony coupled with the overwhelming nature of the petitioner's guilt more likely than not had no effect on the verdict and thereon did not warrant habeas relief).  The Court, therefore, concludes the Supreme Judicial Court did not unreasonably apply federal law here given that the trial judge's admission of Arnold's testimony did not cause actual prejudice amounting to a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 631 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

Accordingly, Caruso's remaining grounds fail on the merits and do not support habeas relief.

**V.     Conclusion and Certificate of Appealability**

For the above reasons, the Court DENIES Caruso's petition for a writ of habeas corpus. D. 1. Caruso may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Miller–El, 537 U.S. at 338 (internal quotations omitted). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion, denying the Petition both on procedural and substantive grounds, debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability, but will give Caruso until March 28, 2019 to file a memorandum, if he seeks to address the issue of whether a certificate of appealability is warranted as to any of the grounds in the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge